UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROSCOE MARTIN,

                Petitioner,              Case No. 1:16-cv-1315

v.                                   Honorable Robert J. Jonker

WILLIE O. SMITH,

                Respondent.

_____/

## <u>OPINION</u>

This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court will dismiss the petition without prejudice for failure to exhaust available state-court remedies.

**Discussion**

I.      Factual allegations

Petitioner Roscoe Martin presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility in Ionia, Michigan.  He is serving a sentence of 50 to 76 years imposed on October 16, 1989 following his jury conviction for second-degree murder in the Genessee County Circuit Court.  When he has completed serving that sentence, he will begin serving a sentence of 7 to 30 years imposed on November 27, 2013 following his Marquette County Circuit Court jury conviction for extortion, in violation of MICH. COMP. LAWS § 750.213. The instant petition challenges the constitutionality of the Marquette County conviction and sentence.

The facts underlying Petitioner's extortion were set forth by the Michigan Court of Appeals as follows:

> Defendant was a prisoner confined to the Marquette Branch Prison when the instant offense occurred.  Lincoln Marshall, an inspector at the Marquette Prison, testified that on May 2, 2011, he intercepted two extortion letters that were addressed to Gail O'Dell, who worked as a correctional officer at the prison.   Marshall had alerted the mail room that all communications from prisoners to prison employees be forwarded to him as a matter of course. Marshall took particular interest in the letters because there was an "inquiry" into whether O'Dell had become overly familiar with some of the prisoners.  The letters were sealed in envelopes and marked "confidential" with no return address.  The letters instructed O'Dell to send money to an address or the author would publicly accuse her of criminal activity.  Marshall made copies of each letter and then sent the copied letters along to O'Dell to see if she would turn the letters in and to better assess the truth of the letter's allegations.
>
> O'Dell testified that she received the letters alleging that she had set up a hit on an inmate who had been stabbed in the eye.  The letters threatened to accuse her of setting up the stabbing if she did not send $10,000 to Gerald Lorence, an attorney in the Lower Peninsula.  O'Dell took the letters to Marshall that same day and told him that she believed defendant had sent them.  O'Dell's belief was based on similarities between the letters and another letter that she had previously received from defendant, where he accused her of having affairs with prisoners.  She knew

defendant wrote that letter because he asked her to retrieve it from the mail.  O'Dell testified that she threw that first letter away without showing it to her superiors. She further testified that the next two letters were written in the same fashion as the first.

        Michigan State Police Officer Todd Johnston interviewed defendant. Defendant admitted to Johnston that an address written inside an envelope flap found in his cell was his handwriting.  This was important because the extortion letters had bragged about knowing the personal address of another prison employee and the written notation on the envelope found in defendant's cell was the same address. Johnston also spoke with the attorney mentioned in the extortion letters.  Defendant had contacted the attorney in 2009 to work on an appeal but they never entered into an attorney-client relationship because the attorney never received legal fees or records from defendant.

        Defendant denied writing or sending the letters.  Defendant testified that both Marshall and Johnston tried to enlist defendant as an informant for investigations involving prison employees and other inmates.   Defendant had multiple conversations with both Marshall and Johnston and, on more than one occasion, the officers took defendant on excursions, driving around the Upper Peninsula. Defendant did not want to become a "snitch" or "mole" because it was too dangerous; the risk of death was too great.  He was eventually transferred to Baraga Prison.  Defendant acknowledged that he corresponded with the attorney named in the extortion letters in 2009 or 2010, stating that he never hired the attorney and that the attorney wanted $2,000 for a retainer to work on his case.

        Defendant's fingerprint was matched to a latent fingerprint on one of the envelopes. His DNA matched samples taken from the two envelope flaps.  The DNA on the flaps was likely from bodily fluid, rather than from cellular debris (dead skin cells, etc.), because there was a large amount of DNA present on the flaps.  The odds that the DNA profiles from the flaps would randomly match defendant's DNA profile were one in 1.5 quadrillion.

*People v. Martin*, No. 319400, 2015 WL 3477791 *1-2 (Mich. Ct. App. Jun. 2, 2015) (footnotes omitted).

        Petitioner directly appealed his conviction and sentence.  His initial brief on appeal, filed by counsel, raised four issues:

    I.     The Defendant's conviction should be overturned because there was insufficient credible evidence at trial to prove the defendant guilty of the crime.

II.     The Trial Court denied the Defendant a fair trial and his due process rights by: denying the Defendant's request for payment of expert witness fees to allow the hiring of experts to attempt to prove the extortion letters were not made on the Defendant's typewriter and the letters had not gone through the mail room; and the Trial Court forbidding the defendant to call a number of MDOC witnesses.

III.    The Defendant's sentence was invalid because it was based on inaccurate information, i.e., improper scoring of the legislatively imposed sentencing guidelines, use of an incorrect burden of proof, and insufficient facts; therefore his due process rights were violated.

IV.     Correctly scoring the guidelines would require resentencing.

(Def.-Appellant's Br. on Appeal, ECF No. 3-1, PageID.127-128.)   Petitioner raised three more

issues in the Michigan Court of Appeals by way of his Standard 4 Brief:[1]

V.      The Defendant's convictions should be overturned because there was insufficient credible evidence at trial to prove me the Defendant guilty of the crime and the trial attorney['']s incompetence failing to familiarize himself with the police incident report, preliminary, pretrial transcripts before trial, to properly and effectively prepare my defense and investigate to prove the state's witnesses were perjuring themselves and the judge and prosecutor knew and allowed it into records as if it was fact in front of my jury at trial violating my due process rights.

VI.     The Trial Court denied me a fair trial and violated all of my state and federal constitutional rights by denying the jury to review all of the evidence excluded and Lincoln Marshall's entire testimony included with mine Roscoe Rico Martin the Defendant include with the Michigan State Police report authored by Detective/Sgt. Todd Johnston and the other state's witnesses['] testimony which would've cast doubt on their credibility and would've added merit to my testimony and could've resulted in a not guilty verdict.

VII.    The Defendant Rosco[e] Rico Martin is entitled to a Ginther hearing, Franks hearing, evidentiary hearing because of the many procedural, plain and structural errors committed by 3 separate attorneys, the judge and prosecutor, my trial attorney failed to effectively protect my state and federal

---

[1]This statement of Petitioner's Standard 4 Brief issues is taken from the table of contents. (Def.-Appellant's Standard 4 Br., ECF No. 1-1, PageID.68-69.)  The issues are stated somewhat differently in the "Statement of Questions Presented." and the body of the brief. (*Id*., PageID.81, 87, 102, 104.)  The form quoted above, however, is the wording Petitioner has chosen to raise the issues in his amended petition. (Am. Pet. Attach. 1, ECF No. 5-1, PageID.251-254.)

> constitutional rights as well as 2 separate judges and 2 other prosecuting attorneys at preliminary, pretrial, and at trial knowingly allowing perjured testimony that's part of records that [is] not fact in accord with preponderance of the evidence of real facts that was excluded, the prosecutor failed to discover upon request and acted in bad faith and conducted malicious prosecution and prosecutorial misconduct and the judge failed to abide by Cannon [sic] laws 1., 2., and 3. which is judicial misconduct and my 3 separate lawyers were ineffective, cases are dismissed, reversed, and remanded for such.

(Def.-Appellant's Standard 4 Br., ECF No. 1-1, PageID.68-69.)  On June 2, 2015, the Michigan Court of Appeals issued an opinion rejecting Petitioner's challenges and affirming Petitioner's conviction and sentence. *Martin*, 2015 WL 3477791.

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. He raised the seven issues he had presented to the Michigan Court of Appeals and two new issues:

> VIII.   A Defendant has a constitutional right to testify at their competency hearing during their own pretrial and only they, not their lawyers, have the authority to waive that right and I was denied that right to refute the examiner's testimony denied by the judge and prosecutor and by my attorney.
>
> IX.   Juror member Keith Kangas knew the state's witnesses Gail O'Dell and Lincoln Marshall and failed to notify his father Johnny Kangas was under investigation with them and others violating my due process to a fair and impartial trial. He played his part for the state and tainted my jury.

(Def.-Appellant's Appl. for Leave to Appeal, ECF No. 1-1, PageID.61-62.)  The Michigan Supreme Court denied leave to appeal by order entered November 2, 2016. *People v. Martin*, 886 N.W. 2d 635 (Mich. 2016).  One week later, Petitioner filed his habeas petition in this Court.  Pursuant to Court order, Petitioner amended his petition on December 16, 2016.  His amended petition raises the nine issues he raised in the Michigan Supreme Court and one new issue:

> X.   The prosecutor Judd Spray who issued my warrant on 2-15-2012 not in accord to MCR 6.101; MCR 6.102, MCL 780.653, MCR 764.1 because it was never signed by the complaining witness, or sworn before a judge, court clerk or magistrate nor is it registered on my register of acitons this blatant jurisdictional defect.

(Am. Pet. Attach. 1, ECF No. 5-1, PageID.258.)

## II.    Exhaustion of State Court Remedies

Before the Court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts. 28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999). Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim. *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971), *cited in Duncan v. Henry*, 513 U.S. 364, 365 (1995), and *Anderson v. Harless*, 459 U.S. 4, 6 (1982). To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court. *Duncan*, 513 U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845. The district court can and must raise the exhaustion issue *sua sponte* when it clearly appears that habeas claims have not been presented to the state courts. *See Prather v. Rees*, 822 F.2d 1418, 1422 (6th Cir. 1987); *Allen*, 424 F.2d at 138-39.

Petitioner bears the burden of showing exhaustion. *See Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994). Petitioner alleges that he raised all ten issues in the Michigan Court of Appeals and the Michigan Supreme Court. The documents he has submitted, however, tell a different story. Petitioner never raised issues VIII, IX, or X in the Michigan Court of Appeals and he never raised issue X in the Michigan Supreme Court.

An applicant has not exhausted available state remedies if he has the right under state law to raise, by any available procedure, the question presented. 28 U.S.C. § 2254(c). Petitioner has at least one available procedure by which to raise the issues he has presented in this application. He may file a motion for relief from judgment under MICH. CT. R. 6.500 *et seq.* Under Michigan law, one such motion may be filed after August 1, 1995. MICH. CT. R. 6.502(G)(1). Petitioner has not yet filed his one allotted motion. (Am. Pet., ECF No. 5-1, PageID.242.) Therefore, the Court concludes that he has at least one available state remedy. In order to properly exhaust his claim, Petitioner must file a motion for relief from judgment in the Marquette County Circuit Court. If his motion is denied by the circuit court, Petitioner must appeal that decision to the Michigan Court of Appeals and the Michigan Supreme Court. *See Duncan*, 513 U.S. at 365-66.

Because Petitioner has some claims that are exhausted and some that are not, his petition is "mixed." Under *Rose v. Lundy*, 455 U.S. 509, 522 (1982), district courts are directed to dismiss mixed petitions without prejudice in order to allow petitioners to return to state court to exhaust remedies. However, since the habeas statute was amended to impose a one-year statute of limitations on habeas claims, *see* 28 U.S.C. § 2244(d)(1), dismissal without prejudice often effectively precludes future federal habeas review. This is particularly true after the Supreme Court ruled in *Duncan v. Walker*, 533 U.S. 167, 181-82 (2001), that the limitations period is not tolled during the pendency of a federal habeas petition. As a result, the Sixth Circuit adopted a stay-and-abeyance procedure to be applied to mixed petitions. *See Palmer v. Carlton*, 276 F.3d 777, 781 (6th Cir. 2002). In *Palmer*, the Sixth Circuit held that when the dismissal of a mixed petition could jeopardize the timeliness of a subsequent petition, the district court should dismiss only the unexhausted claims and stay further proceedings on the remaining portion until the petitioner has

exhausted his claims in the state court.  *Id.*; *see also Rhines v. Weber*, 544 U.S. 269, 277 (2007) (approving stay-and-abeyance procedure); *Griffin v. Rogers*, 308 F.3d 647, 652 n.1 (6th Cir. 2002).

Petitioner's application is subject to the one-year statute of limitations provided in 28 U.S.C. § 2244(d)(1).  Under § 2244(d)(1)(A), the one-year limitations period runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."  Petitioner appealed his conviction to the Michigan Court of Appeals and the Michigan Supreme Court.  The Michigan Supreme Court denied his application on November 2, 2016.  Petitioner did not petition for certiorari to the United States Supreme Court, though the ninety-day period in which he could have sought review in the United States Supreme Court is counted under § 2244(d)(1)(A).  *See Bronaugh v. Ohio*, 235 F.3d 280, 283 (6th Cir. 2000).  The ninety-day period will expire on Tuesday, January 31, 2017.  Accordingly, absent tolling, Petitioner would have one year, until January 31, 2018**,** in which to file his habeas petition.

The *Palmer* Court has indicated that thirty days is a reasonable amount of time for a petitioner to file a motion for post-conviction relief in state court, and another thirty days is a reasonable amount of time for a petitioner to return to federal court after he has exhausted his state-court remedies.  *Palmer*, 276 F.3d at 781.  *See also Griffin*, 308 F.3d at 653 (holding that sixty days amounts to a mandatory period of equitable tolling under *Palmer*).[2]  Petitioner has more than sixty days remaining in his limitations period.  Assuming that Petitioner diligently pursues his state-court remedies and promptly returns to this Court after the Michigan Supreme Court issues its decision,

---

[2]The running of the statute of limitations is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  The statute of limitations is tolled from the filing of an application for state post-conviction or other collateral relief until a decision is issued by the state supreme court. *Lawrence v. Florida*, 549 U.S. 327 (2007).  The statute is not tolled during the time that a Petitioner petitions for writ of certiorari in the United Stated Supreme Court. *Id.* at 332.

he is not in danger of running afoul of the statute of limitations.   Therefore a stay of these proceedings is not warranted.  Should Petitioner decide not to pursue his unexhausted claims in the state courts, he may file a new petition raising only exhausted claims at any time before the expiration of the limitations period.

### Conclusion

For the foregoing reasons, the Court will dismiss the petition for failure to exhaust available state-court remedies.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.   A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service.  It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court already has determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr.*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved the issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.

This Court denied Petitioner's application on the procedural ground of lack of exhaustion. Under *Slack*, 529 U.S. at 484, when a habeas petition is denied on procedural grounds, a certificate of appealability may issue only "when the prisoner shows, at least, [1] that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and [2] that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Both showings must be made to warrant the grant of a certificate. *Id.* The Court finds that reasonable jurists could not debate that this Court correctly dismissed the petition on the procedural ground of lack of exhaustion. "Where a plain procedural bar is present and the district court is correct to invoke it to dispose of the case, a reasonable jurist could not conclude either that the district court erred in dismissing the petition or that the petitioner should be allowed to proceed further." *Id.* Therefore, the Court denies Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.


Dated:      January 10, 2017              /s/ Robert J. Jonker
                                          ROBERT J. JONKER
                                          CHIEF UNITED STATES DISTRICT JUDGE

-10-